## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MARGARET D. NEWTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-cv-01542 (RCL)** |
| | ) | |
| **OFFICE OF THE ARCHITECT OF** | ) | |
| **THE CAPITOL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

This case is related to *Newton v. Office of the Architect of the Capitol*, No. 09-cv-1565, 2012 WL 768204 (D.D.C. Mar. 13, 2012) (Lamberth, C.J.) ("*Newton I*").  Both cases involve plaintiff Margaret Newton's allegations of unlawful racial discrimination, hostile work environment and retaliation against the Office of the Architect of the Capitol ("OAC").  Before the Court is OAC's Motion to Dismiss the Amended Complaint.  Def.'s Mot. [8], May 20, 2011. Having carefully considered the motion, the opposition, the reply, the entire record in this case, and the applicable law, the Court will grant defendant's Motion.  A review of the background of the case, the governing law, the parties' arguments, and the Court's reasoning in resolving those arguments follows.

## I.      BACKGROUND

The Court presented a more detailed background of this case in its *Newton I* Memorandum Opinion granting summary judgment in favor of the OAC.  Accordingly, the Court here will only repeat the facts relevant to this subsequent action.

On October 2, 2005, the OAC hired plaintiff Margaret Newton, an African American, as a GS-12, Step 4, Human Resources Specialist in the Employee Benefits & Services Branch of its

Human Resources and Management Division ("HRMD"). Am. Compl. ¶ 16. Newton's first-line supervisor during this time was Maria Wennersten, Chief of the Employee Benefits & Services Branch. *Id.* ¶¶ 15, 17.

In October 2006, the HRMD was reorganized and Chief Wennersten became head of a different branch. *Id.* ¶ 19. Because of the reorganization, from October 2006 until March 4, 2007, Newton reported directly to HRMD Director Rebecca Tiscione, who served concurrently as Acting Chief of the Employee Benefits & Services Branch. *Id.* ¶ 19. On March 4, 2007, Rebecca Vento was hired as the new Chief of the Employee Benefits & Services Branch and became Newton's first-line supervisor. *Id.* ¶ 21.

In December 2007–January 2008, Newton requested and was denied "a noncompetitive promotion" to the GS-13 level. *Id.* ¶¶ 11, 31. In subsequent months, Newton was placed on a "work plan" and denied an "Alternative Work Schedule." *Id.* ¶ 12. On August 27, 2009, the OAC notified Newton that her position would be subject to a "classification audit" which, depending on the results, could result in a promotion or a demotion. *Id.* ¶¶ 37–39. Newton does not allege what resulted from this first classification audit or whether it was even completed. On March 22, 2010, the OAC notified Newton that her position would be subject to a second "classification audit." *Id.* ¶ 43. The second audit concluded that Newton was performing work at the GS-12 level. *Id.* ¶ 49.

## II.    STANDARD OF REVIEW

Defendant OAC has moved to dismiss the Amended Complaint under Federal Rule of Procedure 12(b)(6). Def. Mot. [8]. A motion to dismiss is appropriate when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome this hurdle, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  The Court must "accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

However, the Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.*  While a complaint does not need to contain detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]" devoid of 'further factual enhancement.'" *Id.* (citations omitted).  In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950; *see also Atherton*, 567 F.3d at 681.

## III.   ANALYSIS

The OAC moves to dismiss all of Newton's claims.  Def.'s Mot. [8].  As to her discrimination and retaliation claims, the OAC argues that Newton has failed to plead a prima facie case of discrimination and retaliation—specifically, that Newton has failed to plausibly allege that she was subject to an adverse employment action.  *Id.* at 17–19, 20–22.  As to her hostile work environment claims, the OAC argues that Newton's allegations demonstrate mere "isolated incidents," not the severe and pervasive conduct required to show a hostile work environment.  *Id.* at 12–16.  Newton counters that dismissal is inappropriate because she has plausibly alleged the adverse actions necessary to survive a motion to dismiss.  Pl.'s Opp'n [12] 20–29.  The Court will discuss these and other arguments in the analysis that follows.

**A.       Discrimination & Retaliation**

Newton brings various discrimination and retaliation claims against the OAC under the Congressional Accountability Act, 2 U.S.C. 1311(a)(1), 1317(a) ("CAA") (Counts I–II, IV–VI, VII).   Pursuant to the CAA, OAC employees are to be free from any discrimination based on race.   2 U.S.C. §§ 1301(3)(F), 1311(a)(1).   Racial discrimination under the CAA is the same as discrimination "within the meaning of section 703 of the Civil Rights Act of 1964."   § 1311(a)(1).   Similarly, employers cannot retaliate against employees who engage in protected activity, and CAA retaliation claims have been analyzed under the same standards as Title VII retaliation claims.   *See Fields v. Office of Johnson*, 520 F. Supp. 2d 101, 106 (D.D.C. 2007).

To state a prima facie case of discrimination, Newton must plausibly allege that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."   *Stella v. Mineta*, 284 F. 3d 135, 145 (D.C. Cir. 2002) (quoting reference omitted).   To state a prima facie case of retaliation, Newton must plausibly allege that "(1) [she] engaged in statutorily protected activity; (2) [she] suffered a materially adverse action by her employer; and (3) that a causal link connects to two."   *Jones v. Bernake*, 557 F.3d 670, 677 (D.C. Cir. 2009).   This case centers on whether Newton has plausibly alleged that she suffered an adverse employment action.

In the discrimination context, an adverse employment action is an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment such that a reasonable trier of fact could find objectively tangible harm."   *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 89 (D.D.C. 2009).   In the retaliation context, a materially adverse action is one that could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination.   *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006); *see also Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006); *Rochon v. Gonzales*, 438

F.3d 1211, 1219 (D.C. Cir. 2006).  Newton has not plausibly alleged facts sufficient to meet either test.

First, Newton has not plausibly alleged an adverse action sufficient to support her discrimination claims—that is, an action "affecting the terms, conditions or privileges of employment or future employment such that a reasonable trier of fact could find objectively tangible harm." *Nurriddin*, 674 F. Supp. 2d at 89.  Newton alleges that on August 27, 2009, the OAC notified her that her position would be subject to a "classification audit" which, depending on the results, *could* result in a promotion or a demotion.  Am. Compl. ¶¶ 37–39 (emphasis added).  This "classification audit" is not an adverse action.  Newton fails to allege that anything occurred as a result of this audit or whether the AOC even completed the audit at all.  It is difficult to understand how an audit that was either never completed, or completed without any impact on Newton's job duties, could affect her employment "terms, conditions or privileges." *Nurriddin*, 674 F. Supp. 2d at 89.  Further, courts have held that actions with some negligible impact on an employee's job, like the denial of travel to conferences, do not qualify as adverse actions.  *Id.*  Newton's case is even clearer because she does not allege that the audit even negligibly impacted the terms of her employment.

Newton also alleges that on March 22, 2010, the OAC notified her that her position would be subject to a second "classification audit."  Am. Compl. ¶ 43.  This second audit concluded that Newton was performing work at the GS-12 level.  ¶ 49.  Again, the Court finds that this audit caused Newton no objectively tangible harm because Newton fails to allege that *anything* occurred as a result.  Prior to, during, and after the audit, Newton was a GS-12 employee.  For as much as Newton argues that the harm caused by this audit was in her failure to be promoted, she cannot bootstrap her insufficient denial of promotion claim from *Newton I* to this subsequent case.  *See Newton I*, at *5–10.  Simply put, "not everything that makes an

employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).

Second, Newton has not plausibly alleged that she suffered a materially adverse action to support her retaliation claims—that is, an action "that could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 70. Newton relies exclusively on the same two classification audits and argues that they would dissuade a reasonable worker from undertaking protected activities. Pl. Opp'n 23–24. From October 2006 until April 2010, when the second audit occurred, Newton argues that she performed GS-13 duties and deserved a promotion. Am. Compl. ¶¶ 24, 41, 47. It is disingenuous for her to demand such a promotion and then to subsequently claim that the classification audit conducted to see if she actually deserved the promotion was a retaliatory action. Additionally, in *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (2008), the D.C. Circuit held that an employer issuing "a letter of counseling, letter of reprimand, and unsatisfactory performance review" did not rise to the level of a materially adverse action necessary to sustain a claim of unlawful retaliation. A classification audit is surely a less severe action than these— especially a classification audit having no resulting negative consequence for the employee. Further, Courts have been unwilling to find that threatened suspensions not actually served qualify as materially adverse actions. *Id.* at 93 (collecting cases). This Court is similarly unwilling to find that a materially adverse action occurred when Newton was threatened with a demotion (or promotion) as a result of the audit, but actually retained her GS-12 employee status.

Therefore, because Newton fails to allege any adverse action for her discrimination claims or a materially adverse action for her retaliation claims, the Court will grant the OAC's motion to dismiss Newton's discrimination and retaliation claims.

### B.      Hostile Work Environment

Newton also brings two claims for a hostile work environment under the CAA § 1311(a)(1) (Counts III & VII). This Court has previously set out the legal standard necessary to prevail on a hostile work environment claim in Newton's prior related case. *Newton I*, at *9–11. However, for the sake of completeness, the Court will repeat the relevant legal standards here.

To make out a claim for a hostile work environment, Newton must demonstrate that she was subjected to discriminatory intimidation, ridicule, and insult that was so severe and pervasive that it altered the conditions of his or her employment and created an abusive working environment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). To determine whether a hostile work environment exists, courts look "to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008).

The D.C. Circuit has found that constant yelling and hostile behavior, and isolated references to a protected status may be insufficient to support a hostile work environment claim. *George v. Leavitt*, 407 F.3d 405, 408, 416–17 (D.C. Cir. 2005), concluded that statements by three employees over a six-month period that the plaintiff should "go back where she came from," separate acts of yelling and hostility, and allegations that the plaintiff was not given the type of work she deserved were isolated instances that did not rise to the level of severity necessary to find a hostile work environment. In *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 54–57 (D.D.C. 2004), the plaintiff's allegations that her employer humiliated her at meetings, screamed at her in one instance, told her to "shut up and sit down" in another instance, and treated her in a manner that was "constantly hostile and hypercritical" did not amount to a hostile work environment, even though these actions may have been disrespectful and unfair. Similarly, the fact that an employee and his immediate supervisor repeatedly "butted heads" and

that the supervisor frequently yelled at the employee during discussions about his work and "threatened" job-related consequences for the employee's refusals to meet workplace expectations did not demonstrate a hostile work environment pervaded by discrimination. *Franklin v. Potter*, 600 F. Supp. 2d 38, 77–78 (D.D.C. 2009).  Moreover, *Hussain v. Gutierrez*, 593 F. Supp. 2d 1, 7 (D.D.C. 2008), concluded that "complaints over undesirable job responsibilities and office arrangements do not support a hostile work environment cause of action."

Newton's hostile work environment claims will be dismissed because the OAC's alleged conduct does not meet the legal standard of "severe and pervasive" conduct that alters the conditions of employment and creates an abusive working environment.  *Oncale*, 523 U.S. at 81. For as much as Newton relies on the AOC's denial of a promotion, her placement on a "work schedule," and the denial of an "Alternate Work Schedule," these actions have already been held insufficient to establish a hostile work environment in Newton's related case.  *See Newton I*, at *9–11.  The only additional actions Newton alleges in this case are the two classification audits. These two audits, standing alone or coupled with the earlier conduct described in *Newton I*, simply set out a series of "isolated instances" occurring over a four-year period.  *See Leavitt*, 407 F.3d at 408.  Newton makes no allegations of verbal abuse, intimidation, ridicule or insult.  It is difficult to conceive of a way these two classification audits could create a hostile work environment if, as has been previously discussed, they do not even qualify as adverse employment actions.  *See* Part III.A.  Accordingly, Newton has, as a matter of law, failed to allege conduct sufficient to create a hostile work environment.

For these reasons, the Court will grant the OAC's motion to dismiss Newton's hostile work environment claims.

**IV.     CONCLUSION**

Therefore, for the reasons stated above, the Court will grant defendant's Motion to Dismiss the Amended Complaint [8].

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Chief Judge Royce C. Lamberth on 3/14/2012.